IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

APRIL REDING,

        Plaintiff,                        No. CIV S-09-3078 GGH

    vs.

MICHAEL J. ASTRUE,              ORDER
Commissioner of
Social Security,

        Defendant.
_____/

        Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for Disability Insurance Benefits ("DIB") as a Disabled Adult Child under Title II of the Social Security Act ("Act"). For the reasons that follow, plaintiff's Motion for Summary Judgment is GRANTED, the Commissioner's Cross Motion for Summary Judgment is DENIED, and the Clerk is directed to enter judgment for the plaintiff.

BACKGROUND

        Prior to the application at issue in this action, plaintiff had filed an application for Supplemental Security Income ("SSI") on March 31, 2004. (Tr. at 67.) On October 28, 2005, plaintiff was found disabled beginning March 12, 2004, after a hearing before an ALJ. (Tr. at

1

71.)

The instant case concerns a later application for Childhood Disability Benefits based on her deceased father's eligibility. In order to qualify for Childhood Disability Benefits, plaintiff must be found disabled prior to attaining age 22, which in this case was August 7, 2003. Plaintiff's alleged onset date for this application was July 7, 2003. (Id. at 135.) Born August 7, 1981, plaintiff applied on August 24, 2007 for these benefits. (Id. at 109.) Plaintiff alleged she was unable to work due to migraine headaches. (Id.) In a decision dated May 6, 2009, ALJ L. Kalei Fong determined that plaintiff was not disabled at any time prior to August 7, 2003, the date she reached age 22. The ALJ made the following findings:[1]

1. Born on August 7, 1981, the claimant had not attained age 22 as of August 7, 2003 (20 CFR § 404.102 and 404.350(a)(5)).

---

[1] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. § 401 et seq. Supplemental Security Income is paid to disabled persons with low income. 42 U.S.C. § 1382 et seq. Both provisions define disability, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment. . . ." 42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A). A parallel five-step sequential evaluation governs eligibility for benefits under both programs. See 20 C.F.R. §§ 404.1520, 404.1571-76, 416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S. Ct. 2287 (1987). The following summarizes the sequential evaluation:
  Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
  Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
  Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
  Step four: Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.
  Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.
Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).
  The claimant bears the burden of proof in the first four steps of the sequential evaluation process. Bowen, 482 U.S. at 146 n.5, 107 S. Ct. at 2294 n.5. The Commissioner bears the burden if the sequential evaluation process proceeds to step five. Id.

> 2. The claimant has not engaged in substantial gainful activity since August 7, 2003, the date she attained age 22 (20 CFR 404.1571 *et seq*.).
>
> 3. Prior to attaining age 22, the claimant had the following severe impairment: headaches and obesity (20 CFR 404.1520(c)).
>
> 4. Prior to attaining age 22, the claimant did not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1525 and 404.1526).
>
> 5. After careful consideration of the entire record, the undersigned finds that, prior to attaining age 22, the claimant had the residual functional capacity to perform the full range of sedentary to light work as defined in 20 CFR 404.1567(b).
>
> 6. The claimant has no past relevant work (20 CFR 404.1565).
>
> 7. The claimant was born on August 7, 1981 and was 22 years old, which is defined as a younger individual age 18-49. (20 CFR 404.1563).
>
> 8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).
>
> 9. Transferability of job skills is not an issue because the claimant does not have past relevant work (20 CFR 404.1568).
>
> 10. Prior to attaining age 22, considering claimant's age, education, work experience, and residual functional capacity, there are jobs that existed in significant numbers in the national economy that the claimant could perform (20 CFR 404.1569 and 404.1569a).
>
> 11. The claimant has not been under a disability, as defined in the Social Security Act, at any time prior to August 7, 2003, the date she attained age 22 (20 CFR 404.350(a)(5) and 404.1520(g)).

(Tr. at 8-15.)

For the current application, the time period during which plaintiff must establish disability is before August 7, 2003, the date plaintiff turned 22. 20 C.F.R. § 404.350(a)(5).

\\\\\

3

ISSUES PRESENTED

Plaintiff has raised the following issues: A. Whether Res Judicata Applies to This Decision; and B. Whether This Decision Failed to Consider Social Security Ruling 83-20.

LEGAL STANDARDS

The court reviews the Commissioner's decision to determine whether (1) it is based on proper legal standards pursuant to 42 U.S.C. § 405(g), and (2) substantial evidence in the record as a whole supports it. Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir.1999). Substantial evidence is more than a mere scintilla, but less than a preponderance. Connett v. Barnhart, 340 F.3d 871, 873 (9th Cir. 2003) (citation omitted). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007), *quoting* Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001) (citations omitted). "The court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008).

ANALYSIS

   A. Res Judicata

Plaintiff argues that the first ALJ decision finding plaintiff disabled due to daily headaches as of March 12, 2004, is entitled to res judicata consideration, and it establishes that plaintiff's disabling headaches did not start on that date but were impairing seven months earlier, before plaintiff turned 22 years old.

"The principles of res judicata apply to administrative decisions, although the doctrine is applied less rigidly to administrative proceedings than to judicial proceedings." Chavez v. Bowen, 844 F.2d 691, 693 (9th Cir. 1988). A finding of disability from a condition as of March 12, 2004, is not necessarily dispositive of disability as of an earlier date necessary to attain child's disability benefits. See Warren v. Bowen, 804 F. 2d 1120, 1121 (9th Cir.1986)

(same issue must be adjudicated in prior proceeding for res judicata to apply).  Furthermore, although not binding, HALLEX I-2-4-40 does define res judicata as applying to a subsequent application which "arises out of the same title of the Act." Def.'s Ex. at 1.  This manual also defines res judicata as pertaining to a "previous determination or decision under the same subpart" and which is based on the same facts and issues.  Id.  It is true that the underlying instant application pertains to Title II and the previous determination decided a Title XVI application.  This reason is not especially persuasive, however, as the two titles contain parallel language.

More importantly, the two applications pertain to different time periods and therefore different facts apply.  Consequently, res judicata does not apply.  Nevertheless, evidence in the record that is close in time or which refers to plaintiff's condition prior to her 22nd birthday is relevant to the time period at issue here.  The record evidence has been independently reviewed to determine whether plaintiff was disabled by her headaches prior to age 22.

Plaintiff also contends that the first ALJ's credibility finding must constitute res judicata.  The first ALJ found plaintiff to be credible.  (Tr. at 231.)  The ALJ making the current decision found plaintiff to be only partially credible.  In Chavez, 844 F.2d at 693, cited by plaintiff, the court considered whether changed circumstances precluded application of res judicata to the first ALJ's finding.  The court found in the affirmative in regard to plaintiff's attainment of advanced age because it constituted a change in age status which was considered outcome determinative under the grids.  It also determined, however, that some findings were entitled to some res judicata consideration absent "new" evidence on those issues.  Id. at 694.

Here, the issue of plaintiff's credibility in regard to the first and second decision also should not be entitled to res judicata effect.  Such a determination is an individualized one made by the ALJ.  "Credibility determinations are the province of the ALJ." Andrews v. Shalala, 53 F.3d 1035, 1043 (9th Cir.1995).  The idea that a plaintiff may have been truthful or credible at some time in her life does not mean that she will be truthful at all other times.

\\\\\

B. Whether This Decision Failed to Consider Social Security Ruling 83-20

Plaintiff next contends that SSR 83-20 should have been considered by the ALJ because it addresses onset date which is at issue here.

In determining the date of onset of disability, the Social Security Administration has indicated that although the ALJ determines the onset date, the date alleged by the individual should be used if it is consistent with all the evidence available.[2]  Social Security Ruling (SSR) 83-20.  The question before this court is therefore "whether the onset date actually chosen is supported by substantial evidence, not whether another date could reasonably have been chosen.  The burden of proof rests upon the claimant."  Magallanes v. Bowen, 881 F.2d 747 (9th Cir. 1989) (citations omitted).

"[M]edical evidence serves as the primary element in the onset determination." SSR 83-20.  Although lay evidence may be permissible, the date alleged by the plaintiff should be used only when consistent with other available evidence.  Social Security Ruling 83-20.  "The impact of lay evidence on the decision of onset will be limited to the degree it is not contrary to the medical evidence of record."  (Id.)

While at times a person's onset date is readily evident because of the happening of a major trauma, in most cases, choosing the onset date is an educated guess based on piecing together, and drawing inferences from, various medical records and testimony.  The latter is true in this case.

> The Commissioner's decision must be affirmed by us if supported by substantial evidence, and if the Commissioner applied the correct legal standards. Id. Under this standard, the Commissioner's findings are upheld if supported by inferences reasonably drawn from the record, see Gallant v. Heckler, 753 F.2d 1450, 1452-53 (9th Cir.1984), and if evidence exists to support more than one rational interpretation, we must defer to the Commissioner's decision, see Morgan v. Commissioner, 169 F.3d 595, 599 (9th Cir.1999).

Batson v. Comm. of SSA, 359 F.3d 1190, 1193 (9th Cir. 2004).

---

[2] Plaintiff's alleged onset date was July 7, 2003.  (Id. at 135.)

6

1    In analyzing the record for substantial evidence, it is important to observe that few
2  medical records as a whole point unerringly to one result.  However, it is not appropriate simply
3  to pick isolated evidence which supports a conclusion while ignoring the qualitative and
4  quantitative evidence to the contrary.
5    The ALJ summarized plaintiff's testimony as indicating that she had headaches
6  daily since 2003 and that they had worsened since age 22.  (Tr. at 12.)  This characterization is
7  not entirely accurate, however.  Plaintiff actually testified that she had endured headaches daily
8  since she was 16 years old.  (Tr. at 100.)   Plaintiff's testimony that the headaches have gotten
9  worse since age 22 was in response to a specific question by the attorney asking whether there
10  was a difference in severity of the headaches between age 22 and the date of the hearing.
11  Plaintiff proceeded to explain how the "serious headaches" were occurring more often recently.
12  (Id.)  She did not discuss the less severe headaches and whether they had worsened.  After
13  describing a typical day of mostly staying in bed because of the pain, plaintiff was asked whether
14  her description also applied to 2003.  She testified: "2003.  It – really nothing has really changed
15  since then.  My headaches have gotten worse you know, now, but it's still the same as it was
16  then.  I've been kind of dealing with these since really kind of like the age of eight but even more
17  so since like 16, 17."  (Id. at 104.)
18    Basing her decision on the previous disability determination's onset date of March
19  12, 2004, which is the date alleged by plaintiff in her earlier SSI application, the ALJ did not rely
20  on the different treating sources which showed a continuous complaining of, and treatment for,
21  headaches since childhood, with transcript records evidencing headaches dating back to 2000.
22  The question is did something happen in March, 2004 (plaintiff's previously chosen date relied
23  upon by the ALJ) which caused a worsening of previously manageable headaches, or is the
24  differently dated objective testing in the record prior and subsequent to March 2004 simply
25  indicative of a condition she had prior to the ALJ's adjudicated onset date.
26    First of all, nothing in the record pinpoints March 2004 as a watershed month vis-

1  a-vis the headaches. That is, there was no extreme worsening in their frequency, severity, or
2  length at this time. Rather, as far back as June, 2000, plaintiff was seeing treating sources for
3  both types of headaches, which were long standing and debilitating prior to August, 2003.

4  Plaintiff saw Dr. Schlatter, a neurologist on June 30, 2000. At this time,
5  plaintiff's severe headaches occurred every six months but were completely disabling and lasted
6  four days. The less severe type of headaches, for which plaintiff had a chronic history, occurred
7  two to three times per week, and were rated 5/10 on a pain scale. Plaintiff reported that these
8  headaches require her to leave school or work and she has lost a number of jobs from them.
9  They do respond to Excedrin, however. (Tr. at 470.) The diagnosis at this time was frequent
10  migraines without aura. Plaintiff was prescribed Imitrex and Nortriptyline. (Id. at 471.)

11  On November 16, 2000, plaintiff was seen and diagnosed with migraine
12  headaches. Her medication at that time was Midrin, Excedrin, and Motrin. (Id. at 500.)

13  On December 4, 2000, plaintiff was seen for headaches which she reported
14  occurring several times in a day. Some headaches lasted four days and individual headaches
15  lasted one to two hours with one to two hour periods of being headache free. The cluster
16  headaches occurred once every three months, and the isolated headaches occurred every three to
17  four weeks. At this time, plaintiff was taking seven to eight medications, all of which did not
18  work, according to her. Plaintiff was prescribed Zoloft, Diamox during menses, and Motrin plus
19  caffeine at onset of headache. (Id. at 509.)

20  Progress notes from October 3, 2002, indicate that plaintiff had longstanding
21  headaches, usually once or twice a month, lasting three hours each. She reported headaches since
22  the age of eight. At this appointment she stated that the headaches were a little bit better and
23  infrequent. (Id. at 459.) At the next visit on January 7, 2003, however, plaintiff was still
24  complaining of headaches. She was diagnosed with menstrual headache at this time. (Id. at
25  459.) On February 13, 2003, plaintiff was diagnosed with migraines, but they were controlled
26  and improved at this time. (Tr. at 458.) In March, 2003, Dr. Stephens diagnosed migraine

8

headaches, with a follow up to a neurologist. (Id. at 457.) A record dated July 14, 2003 by Dr. Stephens, diagnosed migraine headaches, and that a neurologist would follow up. Although it was noted that plaintiff was having "occasional" headaches, she reported that her last headache before this Monday appointment was the previous Friday. (Tr. at 454.)

On July 16, 2003, plaintiff was seen by Dr. Schlatter. Dr. Schlatter had treated her in 2000 for headaches. She noted a history of migraine headaches since age eight, and suffers from two types of headaches. The severe headache occurs very infrequently but is completely debilitating and can last up to four days. (Tr. at 467.) The second type of headaches occurs two to three times per week, "as [it] did in the past," lasts for hours, and causes pain of 7/10. (Id. at 467-68.) Plaintiff reported having tried various medications since 2000, all of which were ineffective or caused side effects. Plaintiff had not needed to visit the emergency room for her headaches. (Id. at 468.) Plaintiff was prescribed Nortriptyline and Imitrex as she had apparently not tried Nortriptyline after being given the previous prescription, and Imitrex was prescribed in a larger dose than previously. (Id. at 468-69.)

On August 14, 2003, plaintiff reported that her headaches were better. (Id. at 453.) Later MRI and CT scans were normal. (Tr. at 445, 259.)

On October 16, 2003, plaintiff went to the emergency room for a severe headache that was ongoing since two days earlier. Although plaintiff was smiling and comfortable, she reported pain of 10/10 and that she had trouble sleeping, despite having tried multiple medications, including OCP, Imitrex, Excedrin, and Motrin. She gave a history of similar headaches for many years. Plaintiff's mother reported that she had been tearful at night. Plaintiff was given morphine and Phenergan injections, and discharged. (Id. at 247.) Plaintiff returned later the same day and reported that her headache returned after three to four hours. She reported headaches since age 8. Plaintiff was given Ativan and discharged with a prescription for more Ativan. (Id. at 249.)

On October 23, 2003, plaintiff reported headaches "on and off since age 15,"

including two ER visits for this reason.  She had tried various medications including Excedrin, Imitrex and others, but nothing helped.  She did obtain relief from Morphine.  (Id. at 268.) Physician notes indicate the etiology of these recurrent headaches was unknown.  (Id. at 269.) Plaintiff again visited the treating doctor for headaches on October 29, 2003.  (Id. at 270.)

Plaintiff underwent an MRI of the brain on November 4, 2003, which was unremarkable.  (Id. at 259.)

On December 24, 2003, plaintiff again reported chronic daily headaches.  (Id. at 528.)

The ALJ did discuss these records; however, she chose to rely on the state agency non-examining report indicating that plaintiff could do sedentary work prior to August, 2003.  (Tr. at 13, 415-19.)  This report does not provide any findings in support of its conclusion.  There does not appear to be a sharp increase in severity or number of headaches after August 7, 2003.  Rather, these headaches appeared to slowly increase in intensity and duration over time.  The aforementioned records indicate that plaintiff's non-migraine headaches were occurring every three months in December, 2000, once or twice a month in October, 2002, and two to three times a week in July, 2003.  (Id. at 509, 459, 467-68.)  It cannot be said that plaintiff's headaches prior to August 6, 2003 were not disabling while her headaches on and after August 8, 2003 were sufficient to qualify her for disability.  In particular, as of her July 16, 2003 visit with Dr. Schlatter, plaintiff's headaches were just as severe as after August 7, 2003, when she was found to be disabled because of them.  She was experiencing them often enough to render her incapable of working a full time week, and she was receiving serious medications for them, indicating that they were in fact debilitating.

Defendant argues that plaintiff attended college, trained to be a medical assistant and held a few jobs in the few years leading up to her 22nd birthday.  Nevertheless, plaintiff testified that she had to quit these jobs due to her headaches, and had to stop school because she missed so many days.  (Id. at 92-93, 105.)  She also had to finish high school through

independent study because of her headaches. (Id. at 91.)  This testimony indicates that plaintiff would not have been able to work prior to age 22 because she would have missed too many days to be employable.

In sum, the evidence does not show that plaintiff's condition worsened such that she was able to do sedentary work on August 7, 2003, but was totally disabled seven months later, on March 12, 2004.  Substantial evidence does not support the ALJ's conclusion.

The record supports a finding that plaintiff was disabled as of July 2003.  As noted above, plaintiff suffered from chronic debilitating headaches for many years prior to March 12, 2004, the determined onset date.  The evidence subsequent to August 2003, for the most part, was simply consistent and confirmatory of this fact.  Nothing in the record demonstrated an acute worsening of plaintiff's symptoms and treating doctor's diagnoses past August 2003.  The logical conclusion is that the problems manifested by August 2003 were the same problems in kind and degree for which plaintiff was later found disabled.

The decision whether to remand a case for additional evidence or simply to award benefits is within the discretion of the court.  Pitzer v. Sullivan, 908 F.2d 502, 506 (9th Cir. 1990).  In general, the court will consider factors such as the completeness of the record, the weight of evidence in plaintiff's favor, and the potential harm to plaintiff due to further delay.  In terms of the completeness of the record, the court will determine whether additional administrative proceedings would remedy the defects in the decision, which the court cannot remedy based on the present record.  See, Salvador v. Sullivan, 917 F.2d 13, 15 (9th Cir. 1990); Barbato v. Commissioner of Social Security Admin., 923 F. Supp 1273, 1277-78 (C.D.Cal. 1996).  Because the record is complete and there is no justification for further delay, the undersigned will remand this case for the purpose of payment of retroactive benefits only, the date of onset being July 7, 2003.

CONCLUSION

Accordingly, IT IS ORDERED that plaintiff's Motion for Summary Judgment is

1  granted, the Commissioner's Cross Motion for Summary Judgment is denied, and judgment is
2  entered for plaintiff.  This case is remanded to the Commissioner for purposes of calculation of
3  benefits only with an onset date of July 7, 2003.
4  DATED: 11/09/2010                        /s/ Gregory G. Hollows

   GREGORY G. HOLLOWS
   U.S. MAGISTRATE JUDGE

GGH/076
Reding3078.ss.wpd